**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TOSIN BALOGUN, on behalf of herself and all others similarly situated,

Plaintiff,

v.

WUNDERKIND CORPORATION,

Defendant.

Case No. 25-cv-6113-KPF
(Related to Case No. 25-cv-05854-KPF)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF TOSIN BALOGUN'S MOTION FOR APPOINTMENT OF JANOVE PLLC AS INTERIM LEAD COUNSEL**

**Janove PLLC**
Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
Raphael@Janove.Law

Liana Vitale
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Liana@Janove.Law

*Attorneys for Plaintiff Tosin Balogun*

Plaintiff respectfully submits this memorandum of law in support of her Motion requesting that the Court consolidate the above-captioned action (the "*Balogun* Action") with *Weiler v. Wunderkind Corp.*, No. 1:25-cv-05854-KPF (S.D.N.Y.) (the "*Weiler* Action"), and designate Janove PLLC as Interim Lead Counsel on behalf of the putative classes.

## INTRODUCTION

Janove PLLC filed the *Balogun* Action after months of independent investigation. This lawsuit does not copy *Weiler*, parrot news coverage or government enforcement action, or recycle boilerplate privacy pleadings the firm has used in other cases. Rather, this action reflects a targeted and unique investigation into both Wunderkind's tracking infrastructure and Plaintiff's specific experience.

Accordingly, Janove PLLC is well positioned to lead this litigation. The firm was launched in 2024, led by attorneys with subject-matter depth, complex and class action litigation experience, and focuses on leveraging technology to creatively tackle new and emerging problems. It has a proven record of uncovering opaque, technical privacy violations and securing meaningful relief for tens of thousands of consumers in high-stakes privacy and consumer protection matters. The Court should therefore appoint Janove PLLC as interim lead counsel.[1]

## I. Factual Background

Plaintiff's claims arise from Defendant Wunderkind Corporation's undisclosed tracking of internet users through hidden technologies embedded across thousands of consumer-facing websites. As detailed in the Complaint, ECF No. 1, Wunderkind operates a behavioral surveillance

[1] Shortly after filing the *Balogun* Action this past July, undersigned counsel reached out to Bursor & Fisher P.A., counsel for Plaintiff in the *Weiler* Action, to express Janove PLLC's willingness to work together for the benefit of the members of the proposed classes, instead of submitting competing leadership applications. Although Janove PLLC can effectively serve as lead counsel on its own, we are still happy to work with Bursor & Fisher P.A., if the Court views that as in the best interest of the class members. Janove Decl. ¶ 3.

infrastructure designed to capture and compile user data across multiple websites, then identify and profile individual users, all without their knowledge or consent. It deploys proprietary scripts, such as the "SmartTag" and "Conversion Pixel," and silently records user activity in real time, including mouse movements, page views, scrolls, keystrokes, IP addresses, and purchase activity.

Wunderkind invades the privacy of over one billion individuals, tracking them across over nine billion devices and thousands of websites. Far beyond a single site or session, Wunderkind tracks individuals using a persistent "PrivacyID" to recognize and follow them across sites, browsers, and devices. This identifier, which people cannot avoid even by clearing their cookies or by using private-browsing modes, anchors a unique behavioral profile identifying that user, made up of real-time signals, historical data, and offline personal information. Wunderkind then profits from this trove of personal information, bundled into individual profiles, by selling its clients the ability to recognize and pursue identified consumers across devices and platforms for targeting and other commercial purposes. Wunderkind's marketing materials tout the scale of this operation, representing that these profiles include names, email addresses, phone numbers, transaction histories, and inferred interests, and are supplemented by regular data transfers from the companies that partner with Wunderkind.

Plaintiff Balogun's allegations reflect the nature and scope of the surveillance at issue. She is a California resident who, over the year prior to the filing of the Complaint, visited numerous Wunderkind-partner websites, including Macy's, Fashion Nova, Vogue, Shutterfly, Hertz, Tarte, HelloFresh, Belk, and VistaPrint. In some cases, she shared her email address for transactional purposes such as receiving a discount or confirmation email, but not knowing that this data would be shared with or exploited by a third-party tracking company. She has no relationship with Wunderkind and was unaware of its presence or capabilities.

The Complaint alleges that Wunderkind fails to disclose its tracking and profiling activities. Its technologies are not labeled, not visible to ordinary users, and not subject to informed consent. Consumers browsing the internet reasonably believe that if they do not log in, accept cookies, or submit personal information, their activity remains private. However, Wunderkind defeats those expectations across the board: matching anonymous interactions to known identities and monetizing the resulting profiles through cross-site marketing and targeting.

## II. Procedural History

On July 25, 2025, Plaintiff Balogun filed a Complaint asserting six causes of action against Defendant Wunderkind Corporation on behalf of nationwide and California classes, bringing claims under the common law, the federal Electronic Communications Privacy Act, California statutory and constitutional law, and also under New York General Business Law § 349.

The *Balogun* Complaint alleges that Wunderkind secretly tracks users across thousands of websites. It specifically identifies the sites Plaintiff Balogun visited—including Macy's, Fashion Nova, Vogue, Shutterfly, Hertz, Tarte, HelloFresh, Belk, and VistaPrint—that deployed Wunderkind tracking. It also details Plaintiff's expectations of anonymity and her privacy-protective measures, such as unsubscribing from marketing emails, clearing cookies, using private browsers, and opting out of tracking.

Seven business days earlier, on July 16, 2025, Plaintiff Erin Weiler filed *Weiler v. Wunderkind Corp*., No. 1:25-cv-05854-KPF (S.D.N.Y.) (the "*Weiler* Action"), asserting five causes of action on behalf of nationwide and California classes, bringing similar claims except lacking a claim under the New York GBL. The *Weiler* Complaint generally alleges that Wunderkind's code collects user activity across websites and devices, enabling it to build marketing profiles, situating these practices within the ecosystem of data brokers, real-time bidding, and cookie syncing.

On September 29, 2025, Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith filed a California state court action, *Wine et al. v. Wunderkind Corp.*, No. 3:25-CV-145737 (Cal Sup. Ct., Cty of Alameda) ("the *Wine* Action"), asserting six California causes of action on behalf of a California class. On November 21, 2025, the *Wine* Action was removed to the U.S. District Court for the Northern District of California. *See* No. 25-cv-10079 (N.D. Cal.). The parties in the *Wine* action have proposed a stipulated briefing schedule for plaintiffs' motion to remand to state court and Wunderkind's motion to transfer the action to the Southern District of New York, with briefing to be completed by February 4, 2026. *See Wine* Action, ECF No. 5.

On October 20, 2025, the Court granted the *Balogun* and *Weiler* Plaintiffs' motion in the *Weiler* Action to set a schedule for briefing appointment of interim class counsel, though the Court has not yet consolidated the actions. *See Weiler* Action, ECF Nos. 18, 26. Plaintiff Balogun respectfully submits this motion in accordance with that Order and within the 10-page limit agreed to with counsel for Plaintiff Weiler. Plaintiff Balogun also requests consolidation for the reasons set forth in the prior motion in the *Weiler* Action. ECF No. 18.

**LEGAL STANDARDS**

Rule 23(g)(3) provides that the Court "may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities[.]" *Bernstein v. Cengage Learning, Inc.*, 2019 WL 6324276, at *1 (S.D.N.Y. Nov. 26, 2019) (quoting Manual for Complex Litigation (Fourth) § 21.11 (2004)) (court's alterations). Appointing interim lead counsel in this action will also "minimize the risk of duplicative filings and allow the Court to consolidate related filings more efficiently." *Id.*

"'When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Rule 23(g)(1)(A).'" *Johnson v. Insider Inc.*, No. 22 CIV. 6529 (AT), 2022 WL 16836819, at *1 (S.D.N.Y. Nov. 8, 2022) (quoting *Bernstein*, 2019 WL 6324276, at *1); *see Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D.N.Y. 2016). Rule 23(g)(1)(A) provides, in relevant part, that in appointing class counsel the Court must consider (a) the work counsel has done in identifying or investigating potential claims in the action; (b) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (c) counsel's knowledge of the applicable law; and (d) the resources that counsel will commit to representing the class. Fed R. Civ. P. 23(g)(1)(A). The Court may also consider "'any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class.'" *In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(g)(1)(B)).

## ARGUMENT

### I. Janove PLLC Has Performed Substantial Work Investigating This Case

Though Plaintiff Balogun filed her action seven business days after the *Weiler* Action, the minor difference in timing is not relevant to the Court's consideration of appointing interim counsel. The *Balogun* Action is not a copycat of the *Weiler* Action, nor a response to a news article or a filing of a government action. And Janove PLLC's work here is not derived from generic templates or recycled privacy pleadings the firm has used in other cases. Rather, this action reflects a targeted investigation into both Wunderkind's tracking infrastructure and Plaintiff's specific experience. The resulting Complaint is the product of diligent and case-specific factual development and a sustained investment in understanding the technical architecture at issue.

As a result, the *Weiler* Action's application for appointment does not have a "significant first-filer advantage." *See Breakwater Trading LLC v. JPMorgan Chase & Co.*, 2020 WL

5992344, at *3 (S.D.N.Y. Oct. 9, 2020) ("Both complaints were filed within a few days of one another; thus, neither application has a significant first-filer advantage."); *see also In re GEICO Customer Data Breach Litig.*, 2022 WL 22910573, at *3, 4 (E.D.N.Y. Apr. 8, 2022) (finding no "significant first-filer advantage" as to proposed interim counsel that filed nearly two weeks before a competing applicant where both proposed counsel "made significant efforts to investigate, prepare, and organize this litigation"). The *Balogun* Action is not a copy of *Weiler*, and is a product of Janove PLLC's independent identification and investigation of potential legal claims against Wunderkind. *Cf. In re Mun. Derivatives Antitrust Litig*., 252 F.R.D. 184, 186 (S.D.N.Y. 2008) (first-filer advantage where later firms filed complaints "substantially similar to those initial filings").

From the outset, Janove PLLC has approached this matter with rigorous attention to the facts and technology at issue. Since August 2024, the firm has invested significant time and resources in work that includes, but is not limited to:

1) Analyzing Wunderkind's various behavioral-tracking and identity-resolution systems, including its "SmartTag," "Conversion Pixel," and "PrivacyID" tools;
2) Confirming Wunderkind's deployment of these tools across hundreds of consumer-facing websites and applications, and documenting their operation across that ecosystem;
3) Researching the fingerprinting, cross-device tracking, and identity-resolution technologies underlying Wunderkind's platform;
4) Investigating Wunderkind's "Identity Graph" and related data-broker practices, including the pooling and enrichment of personal identifiers;
5) Reviewing technical documentation, marketing materials, patents, and public statements describing Wunderkind's operations;
6) Evaluating dozens of individuals and their experiences on sites running Wunderkind's tracking code;
7) Conducting extensive legal research into potential legal claims;

8) Assessing the adequacy and typicality of the named Plaintiff;

9) Mapping Wunderkind's corporate structure, business relationships, and compliance with data-broker obligations; and

10) Drafting and filing a detailed Complaint grounded in independent investigation and technical analysis.

In sum, Janove PLLC has already done the work that Interim Lead Counsel must do and has positioned itself to continue advancing this litigation for the benefit of the proposed class.

## II. Janove PLLC Has Extensive Experience Handling Class Actions

Janove PLLC attorneys Raphael Janove and Liana Vitale began their careers as defense counsel at Sullivan & Cromwell LLP and Cleary Gottlieb Steen & Hamilton LLP, respectively, where they worked on high-stakes complex and class litigation. They use their insights and experience on the defense side to be more effective attorneys for plaintiffs. They also have extensive experience litigating class matters in this Court. Janove Decl. ¶¶ 14, 20.

Before Raphael Janove launched Janove PLLC, he was a partner at Pollock Cohen LLP, where he spearheaded the firm's class action practice and launched its mass arbitration practice. While there, he conceptualized and led novel Lanham Act class action lawsuits on behalf of millions of small businesses, and was appointed co-lead class counsel or lead class counsel in each matter, three of which have settled, including one in this Court. *See Tipsy Nail Club v. ClassPass*, No. 1:21-cv-08662, ECF No. 118 (S.D.N.Y.); Janove Decl. ¶ 14. Mr. Janove still continues to represent his clients in class actions that he originated at his prior firm, including those alleging consumer law and privacy violations unique to mobile games, *Prado, et al. v. FunPlus International AG*, No. 4:22-cv-05023 (N.D. Cal.); *Yanez et al. v. FunPlus International AG, et al.*, No. 4:23-cv-2667 (N.D. Cal.); *Guns of Glory: Lost Island* in *Kelly v. FunPlus International AG, et al.*, No. 3:23-cv-04122 (N.D. Cal.), a Lanham Act class case, *Gracie Baked LLC, et al. v. GiftRocket, Inc. et al.*, No. 1:22-cv-04019 (E.D.N.Y.), and two novel class actions on behalf of

civil immigrant detainees at former county detention centers. *See Ruderman v. McHenry County*, No. 3:22-cv-50115 (N.D. Ill.); *Ruderman v. Kenosha County*, No. 2:23-cv-01336 (E.D. Wis.). *See* Janove Decl. ¶¶ 17-18.

After founding Janove PLLC, Mr. Janove has launched multiple new class matters and created a robust mass arbitration practice, representing tens of thousands of clients in mass arbitrations ranging from data breaches, privacy violations, consumer protection, and other theories. The Firm's recent class cases include consumer privacy claims, such as *Balogun et al. v. Advance Magazine Publishers Inc.*, No. 1:24-cv-07326 (S.D.N.Y.) and *Dougherty et al. v. Zynga, Inc.*, No. 3:25-cv-04051-SI (N.D. Cal.), and those alleging consumer fraud including *In re Huel Heavy Metal Litigation*, No: 1:25-cv-05783 (E.D.N.Y.), *Brower et al. v. Colgate-Palmolive Company*, No. 1:25-CV-03348 (S.D.N.Y.), *Cavallaro-Kearins et al. v. Gruns Nutrition, Inc.*, No. 1:25-CV-04998 (S.D.N.Y.), *Sciortino et al. v. Drink LMNT, Inc.*, No. 1:25-CV-03126 (E.D.N.Y.), and *Damas et al. v. Health-Ade LLC*, 8:25-cv-02515 (C.D. Cal.). In addition, Janove PLLC actively litigates another Lanham Act class action, *Castro et al. v. 7 Cups of Tea, Co. et al.*, No. 1:25-cv-02563 (E.D.N.Y.), and is serving as Additional Consumer Indirect Purchaser Plaintiff Class Counsel in a multidistrict litigation concerning the alleged price fixing practices of major sugar producers and sellers in the United States. *In re Granulated Sugar Antitrust Litigation* (MDL 3110) (D. Minn.); *see* Janove Decl. ¶ 21.

Liana Vitale, senior counsel at Janove PLLC, has extensive experience in federal court litigation and arbitration, which she leverages to help clients in Janove PLLC's class action and mass arbitration matters. As noted above, Ms. Vitale began her career at Cleary Gottlieb Steen & Hamilton, LLP, where she worked for almost a decade on complex, high-stakes litigation including class actions. She has also advised companies in evaluating and defending IP-related claims, and

developed expertise in understanding novel technologies and related legal issues. Ms. Vitale uses these skills to efficiently and effectively represent plaintiffs and arbitration claimants at Janove PLLC. Since joining Janove PLLC as Senior Counsel, Ms. Vitale has played a key role in litigating many of the firm's class actions, including those alleging consumer law and privacy violations. *See* Janove Decl. ¶ 24.

### III. Janove PLLC Has Extensive Knowledge Of Applicable Law

Janove PLLC has deep experience litigating complex digital-privacy matters on behalf of consumers. The firm has represented tens of thousands of clients in online-tracking and surveillance cases, and in broader data-privacy disputes. It has also handled a substantial volume of privacy-focused mass arbitrations—an increasingly important enforcement tool in the face of mandatory arbitration provisions. And it has successfully resolved numerous privacy matters.

The firm's expertise extends directly to the technologies and statutory frameworks at issue here. Janove PLLC has litigated cases involving behavioral tracking, device fingerprinting, pixel-based surveillance, and identity-resolution systems—technologies that, like Wunderkind's, operate invisibly and raise complex questions under the Electronic Communications Privacy Act, the California Invasion of Privacy Act, the California Constitution, and state consumer-protection statutes of California and New York, among others. In these matters, the firm has argued threshold legal issues at the forefront of modern privacy law, including the meaning of "contents" under wiretap statutes, the treatment of pseudonymous identifiers, the application of reasonable-expectation-of-privacy doctrines to emerging tracking tools, and the boundaries and scope of consent to data-tracking practices.

Janove PLLC also has the capacity to litigate privacy claims at scale. The firm has coordinated thousands of mass-arbitration filings arising from violations of its clients' privacy rights—work that demands sophisticated intake systems, coordinated discovery, and the ability to

translate individualized records into coherent patterns of liability. As a testament to the firm's expertise and zeal in representing its clients, Janove PLLC has recovered millions on behalf of mass arbitration claimants in privacy matters, including in digital-tracking and wiretap arbitrations involving third-party surveillance, mobile application data-sharing, and covert behavioral profiling. These outcomes demonstrate the firm's ability to remedy abstract digital harms.

## IV. Janove PLLC Has Committed—And Will Continue To Commit—The Resources Necessary To Represent The Class

Janove PLLC has invested substantial attorney time, technical analysis, and strategic development into this case, including detailed examination of the tracking technologies at issue, evaluation of potential causes of action, and outreach to affected consumers. Janove PLLC is also well equipped to litigate this matter. Mr. Janove and Ms. Vitale are experienced attorneys supported by a talented team of legal staff. Janove Decl. ¶ 25. And the firm employs disciplined staffing and efficient case-management systems that prevent duplication and ensure consistent, high-quality work. Its attorneys have managed large-scale privacy matters involving tens thousands of clients across jurisdictions and fact patterns, and are experienced in coordinating complex discovery, expert analysis, and motion practice in technically demanding cases. Critically, Janove PLLC does not equate robust representation with redundant or excessive billing. The firm's litigation model is lean but scalable. Its team is prepared to dedicate the necessary time, personnel, and financial resources to lead this action, but to do so with an eye toward strategic efficiency and results, not excess.

The firm's work to date reflects that commitment, which it will continue throughout the litigation. Janove PLLC is well positioned to steer discovery, expert development, dispositive briefing, and potential resolution in a manner guided by the highest standards of professionalism and efficiency.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court appoint Janove PLLC as Interim Lead Counsel.

Respectfully Submitted,

Dated: December 2, 2025

**JANOVE PLLC**

By: *___/s/ Raphael Janove___*
Raphael Janove
500 7th Ave., 8th Fl.
New York, NY 10018
Raphael@Janove.law

Liana Vitale
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
Liana@Janove.law

*Attorneys for Plaintiff and All Other Similarly Situated*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(c) and Your Honor's Individual Rule 4(B), I hereby certify that this brief contains 3,022 words, including footnotes but excluding text specified in Rule 7.1(c) and 4(B), and is within the 10-page limit agreed to with counsel for the *Weiler* Action.

Date: December 2, 2025

*/s/ Raphael Janove*
Raphael Janove